sIN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| MTB SERVICES, INC., <br> t/a, a/k/a, f/k/a MY-T-BRITE, INC. | * | |
| | * | |
|     Plaintiff, | * | |
| v. | * | Civil Action No. RDB-12-02109 |
| | * | |
| TUCKMAN-BARBEE CONSTRUCTION <br> CO., INC., *et al.*, | * | |
|     Defendants. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

Plaintiff MTB Services, Inc. ("Plaintiff" or "MTB") has brought this action alleging negligence and breach of contract against Defendants Tuckman-Barbee Construction Co., Inc. ("Tuckman-Barbee"), Brand Energy Services, LLC ("Brand Energy")[1] and Church Restoration Group, LLC ("CRG") (collectively "Defendants") for damage to equipment leased by Plaintiff MTB to Defendant CRG in connection with a construction project involving the restoration of the Naval Academy Chapel in Annapolis, Maryland. Plaintiff initially filed suit in the Circuit Court of Maryland for Anne Arundel County. Subsequently, Defendant Tuckman-Barbee removed this action to this Court, with the consent of both co-Defendants Brand Energy and CRG, on the basis of diversity jurisdiction pursuant to 28

---

[1] The Court notes that in its March 26, 2013 Memorandum Opinion (ECF No. 53), it initially referred to this Defendant as Brand Energy Solutions, LLC as Brand Energy Services, LLC trades as and is also known as Brand Energy Solutions LLC.

U.S.C. §§ 1332, 1441 and 1446.[2]  The Complaint alleges claims of negligence/respondeat superior against Defendants Tuckman-Barbee and Brand Energy (Counts I & II) as well as claims of breach of contract and negligence/respondeat superior/vicarious liability against Defendant CRG (Counts III & IV).  Additionally, Defendants Tuckman-Barbee and CRG have each filed their respective cross-claims against their co-Defendants (ECF Nos. 22, 23, 60 & 61).

The open motions pending before this Court concern issues surrounding the relationship between Plaintiff MTB and Defendant Tuckman-Barbee.  On the one hand, Defendant Tuckman-Barbee has moved for summary judgment (ECF No. 28), has moved to substitute Travelers Property Casualty Company of America ("Travelers") as a real party in interest (ECF No. 37), and has moved to join Travelers as a party plaintiff (ECF No. 44).  Travelers Property Casualty Company of America ("Travelers") is Plaintiff MTB's insurer.  Travelers is organized under the laws of the State of Connecticut and has its principal place of business in Connecticut.  *See Star Ins. Co. v. Cont'l Servs., Inc.*, --- F. Supp. 2d ----, 2013 WL 175229, at *2 (D. N.D. Jan. 17, 2013).  On the other hand, Plaintiff MTB has filed a Motion for Leave to File Amended Complaint (ECF No. 32) in which it seeks to add a count asserting gross negligence/recklessness/respondeat superior against Defendant Tuckman-Barbee.  Also pending before this Court is Plaintiff MTB's Motion for Leave to File Surreply

---

[2] MTB is a corporation organized under the laws of the State of Kansas with its principal place of business in Kansas.  Notice of Removal ¶ 7, ECF No. 1.  Defendants Tuckman-Barbee, Brand Energy and CRG are corporations individually organized under the laws of the State of Delaware having their respective principal places of business in the States of Maryland, Georgia and Pennsylvania.  *Id.*; Worthington Aff. ¶ 6, ECF No. 10-3.  Additionally, the amount of damages sought in this case ($216,077.01) satisfies the minimum amount in controversy requirement of $75,000.  Notice of Removal ¶ 8.

in Opposition to Defendant Tuckman-Barbee's Motion for Summary Judgment (ECF No. 41). The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2011). For the reasons that follow, Defendant Tuckman-Barbee's Motion for Summary Judgment (ECF No. 28) is DENIED. Plaintiff MTB's Motions for Leave to File Amended Complaint (ECF No. 32) and for Leave to File Surreply in Opposition to Defendant Tuckman-Barbee's Motion for Summary Judgment (ECF No. 41) are DENIED. Additionally, Defendant Tuckman-Barbee's Motion to Substitute Real Party in Interest (ECF No. 37) is MOOT and its Motion to Join Travelers Property Casualty Company of America as a Party Plaintiff (ECF No. 44) is GRANTED. Accordingly, Travelers Property Casualty Company of America shall be joined in this action as a Party Plaintiff in addition to Plaintiff MTB Services, Inc.

BACKGROUND

In the context of a motion for summary judgment, this Court reviews the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

At some time in late 2008 or early 2009, the Public Works Department of the United States Naval Academy entered into a contract with Defendant Tuckman-Barbee Construction Co., Inc. ("Tuckman-Barbee") for repairs to the Chapel Interior at the United States Naval Academy in Annapolis ("the Project"). AIA Doc. A401-1997, Standard Form Agreement between Contractor and Subcontractor, ECF No. 28-2 [hereinafter TB-CRG Contract"]. On January 12, 2009, Defendant Tuckman-Barbee, as the general contractor on

the Project, entered into a subcontract agreement with co-Defendant Church Restoration Group, LLC ("CRG") for the repairs of the chapel interior. *Id.* CRG in turn entered into sub-subcontract agreements relating to the Project. First, on January 20, 2009, CRG and co-Defendant Brand Energy Services, LLC ("Brand Energy") entered into a "continuing agreement covering future work" for the erection of temporary scaffolding on the Project. CRG-Brand Energy Standard Form of Subcontract Agreement, ECF No. 28-4 [hereinafter CRG-Brand Energy Agreement]. Then, on May 27, 2009, CRG entered into a similar continuing agreement covering future work with Plaintiff MTB Services, Inc. ("Plaintiff" or "MTB"), doing business as Easy Reach Lifts, for the rental of lifts for the Project. CRG-Easy Reach Standard Form of Subcontract Agreement, ECF No. 28-5 [hereinafter CRG-MTB Agreement]; Worthington[3] Aff. ¶ 7, ECF No. 10-3. Schedule A of this agreement designates an earlier lift rental agreement, entered into by MTB and CRG on May 13, 2009,[4] as the proposal defining the "Work" contracted for. CRG-MTB Agreement at 9-12.

On August 25, 2009, pursuant to a similar rental agreement, MTB leased the ReachMaster Falcon FS 95 Lift ("the Lift") to CRG. August 25, 2009 Easy Reach Rental Agreement, ECF No. 28-6. A little less than a month later, on September 22, 2009, an incident occurred which damaged the Lift while it was being transported up scaffolding into

---

[3] As of July 23, 2012, Paul Worthington was the Vice President of CRG. Worthington Aff. ¶ 1.
[4] Interestingly, Plaintiff MTB has previously argued that the May 13, 2009 Rental Agreement is a unique contract between itself and CRG. MTB's Res. in Opp'n to CRG's Mot. to Dismiss at 4, ECF No. 17. However, MTB has failed to indicate that this agreement was included as an attachment defining the work contracted for in the CRG-MTB Agreement. MTB also did not include this agreement as an attachment to its submission of the CRG-MTB Agreement as an exhibit to its Response in Opposition to Summary Judgment. MTB's Resp. in Opp'n to Tuckman-Barbee's Mot. for Summ. J., Ex. 4, ECF No. 34-5.

the Naval Academy Chapel. Contractor Significant Incident Report, ECF No. 34-4. A year and a half later, Travelers Property Casualty Company of America ("Travelers"), MTB's insurance carrier, sent a subrogation claim letter, to CRG's insurer, Selective Insurance Company of America, requesting reimbursement for the damage to the Lift. Letter from Travelers to Selective Ins. Co. of Am. (Mar. 29, 2011), ECF No. 42-2. According to Travelers, the Lift was damaged in the amount of $216,077.01, which includes MTB's $2,500.00 deductible. *Id.* On December 16, 2011, Travelers, by its counsel,[5] sent a "notice of claim" to Defendants Tuckman-Barbee, Brand Energy and CRG indicating that it paid MTB $216,077.01 as a result of the damage to the Lift, and that as such, it had "incurred a subrogation interest for this amount." Notice of Claim, ECF No. 28-1. When neither defendant reimbursed Travelers, Plaintiff MTB brought this action alleging negligence and breach of contract against Defendants Tuckman-Barbee, Brand Energy and CRG in the Circuit Court of Maryland for Anne Arundel County, Case No. 12170098.[6] *See* Notice of Claim, ECF No. 28-1; Notice of Removal ¶ 1, ECF No. 1. This action was then removed to this Court, on July 16, 2012, by Defendant Tuckman-Barbee with the consent of both Brand

---

[5] The Court notes that Travelers counsel is also Plaintiff MTB's lead attorney in this case.

[6] Plaintiff MTB initially brought a breach of contract and negligence action against Defendant CRG in the District Court of Johnson County, Kansas, Case No. 10-CV-02929. *MTB Services, Inc. v. Church Restoration Group, LLC*, Case No. 10-CV-02247-RDR-KGS (D. Kan.), Docket, ECF No. 10-5. On April 28, 2010, CRG removed that action to the United States District Court for the District of Kansas. *Id.* Following Defendant CRG's filing of a Motion to Dismiss for Lack of Jurisdiction and Improper Venue or in the Alternative for a Venue Transfer, Plaintiff MTB filed a Notice of Dismissal Without Prejudice. *Id.*

Energy and CRG on the basis of diversity jurisdiction[7] pursuant to 28 U.S.C. §§ 1332, 1441 and 1446. *Id.*

STANDARDS OF REVIEW

## I. Motion for Leave to Amend

Pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, "[a] party may amend its pleading once, as a matter of course" within "21 days after serving it," or "if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." FED. R. CIV. P. 15(a) (1)(A)-(B). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." FED. R. CIV. P. 15(a)(2). In *Foman v. Davis*, 371 U.S. 178, 182 (1962), the United States Supreme Court explained that "in the absence of any apparent or declared reason . . . the leave sought should, as the rules require, be 'freely given.' " The United States Court of Appeals for the Fourth Circuit has "interpreted [Rule]15(a) to provide that 'leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile.' " *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) (citing *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986)).

---

[7] *See supra* n.2.

## II.     Motion for Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *See id.* at 249. In undertaking this inquiry, this Court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *See Scott v. Harris*, 550 U.S. 372, 378 (2007).

## ANALYSIS

## I.     Plaintiff MTB's Motions for Leave to File Amended Complaint (ECF No. 32) and for Leave to File Surreply (ECF No. 41)

In moving to amend its complaint, Plaintiff MTB Services, Inc. ("Plaintiff" or "MTB"), doing business as Easy Reach Lifts, seeks to add an additional count against Defendant Tuckman-Barbee Construction Company, Inc. ("Tuckman-Barbee") alleging gross negligence/recklessness/respondeat superior. Federal Rule of Civil Procedure 15(a), provides that leave to amend "shall be freely given when justice so requires," and the general rule is that Rule 15(a) be liberally construed. *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Accordingly, leave should be denied only when amending the pleading would prejudice the opposing party, reward bad faith on the part of the moving party, or would amount to futility. *See Steinburg v. Chesterfield Cnty. Planning Comm'n*, 527 F.3d 377, 390 (4th Cir. 2008). This Court has stated that "[a] review for futility is not an evaluation of the underlying merits of the case." *Next Generation Grp. v. Sylvan Learning Ctrs., LLC.*, CCB-11-0986, 2012 WL 37397, at *3 (D. Md. Jan. 5, 2012); *see also Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir. 1980) ("Unless a proposed amendment may clearly be seen to be futile because of substantive or procedural considerations, . . . conjecture about the merits of the litigation should not enter into the decision whether to allow amendment."). At minimum, granting leave to amend is warranted when "at least some [of the requesting party's] claims are not futile." *Next Generation Grp.*, 2012 WL 37397 at *3. "Futility is apparent if the proposed amended complaint fails to state a claim under the applicable rules and accompanying standards." *Katyle v. Penn Nat. Gaming Inc.*, 637 F.3d 462, 471 (4th Cir. 2011) (citing *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008) ("Because [the] proposed amended complaint does not properly state a claim under Fed. R. Civ. P. 12(b)(6) . . ., we find the district court correctly determined that further amendment would be futile.").

In this case, Plaintiff seeks to amend its complaint by alleging a gross negligence claim against Defendant Tuckman-Barbee. In Maryland,[8] "[g]ross negligence has been

---

[8] Both Tuckman-Barbee and MTB cite to Maryland law in support of their positions. *See* Tuckman-Barbee's Opp'n to Pl.'s Mot. to Amend, ECF No. 35; Pl.'s Reply to Tuckman-Barbee's Opp'n, ECF No. 40. Moreover, as explained below, Maryland substantive law applies in this case. In tort cases, Maryland adheres

equated with willful and wanton misconduct, a wanton or reckless disregard for human life or for the rights of others." *Wright v. Carrol Cnty. Bd. of Educ.*, ELH-11-3103, 2012 WL 1901380, at *13 (D. Md. 24, 2012) (quoting *White v. King*, 223 A.2d 763 (Md. 1966) (quotation marks omitted). Gross negligence has also been described as "[a]n intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another, and also implies a thoughtless disregard of the consequences without the exertion of any effort to avoid them." *Taylor v. Harford Cnty. Dep't of Soc. Servs.*, 862 A.2d 1026, 1034 (Md. 2004). Additionally, Maryland courts have not only stated that gross negligence "implies malice and evil intention," *Bannon v. B&O. R.R. Co.*, 24 Md. 108, 124 (1866), but have also required that malice be alleged as part of a claim of gross negligence. *See, e.g., Foor v. Juvenile Servs. Admin.*, 552 A.2d 947, 956 (Md. App. 1989) (dismissing gross negligence claims where the complaint was devoid of any allegations as to malice on the part of defendants).[9] Finally, this Court has recently held that to state a claim for gross negligence, "bald and conclusory allegations will not suffice; specificity is required." *Wright*, 2012 WL 1901380, at *13 (dismissing a gross negligence claim for failure to state a claim because plaintiffs alleged in a conclusory manner that "defendants, generally, were

---

to the *lex loci delicti* doctrine, which applies the law of the state where the alleged injury occurred. *Laboratory Corp. of America v. Hood*, 911 A.2d 841, 845 (Md. 2006).

[9] This case involved the institution of a lawsuit by a foster family whose biological child was murdered by a foster child while under the influence of drugs. *Foor*, 552 A.2d at 950. The family brought claims of gross negligence against three employees of the Maryland Juvenile Services Administration for knowingly placing a foster child who abused drugs in their family despite their requirement that no child placed with them should have a history of drug abuse, past or present. *See id.*

aware that their conduct was insufficient to protect [plaintiff]. But, the Complaint contain[ed] no facts to support that assertion.").

As in *Wright* and *Foor*, Plaintiff MTB has failed to state a claim for gross negligence in this case. Plaintiff makes general and conclusory allegations concerning the unspecified employees and or agents who allegedly failed to sufficiently inspect the scaffolding on which the Lift was to be placed or transported and who should have known that the scaffolding was insufficient. Plaintiff also repeats on several occasions in a conclusory manner that Tuckman-Barbee's actions were "grossly negligent, wanton and reckless." Moreover, the Complaint is utterly devoid of any allegations as to malice on the part of Tuckman-Barbee, its employees or agents. Finally, much as in *Foor*, Plaintiff's attempt to "throw in the term 'gross negligence' " in what appears to be a negligence claim, is simply "not enough" to state a claim for gross negligence. *Foor*, 553 A.2d at 956. Because Plaintiff fails to state a claim for gross negligence under Maryland law, amending the complaint would amount to futility. *See Katyle*, 637 F.3d at 471. Accordingly, Plaintiff MTB's Motion for Leave to File Amended Complaint is DENIED.

Plaintiff MTB has also sought Leave to File a Surreply to Defendant Tuckman-Barbee's Motion for Summary Judgment. The Surreply, were it to be allowed by the Court, would seek to make further arguments concerning the issue of waivers of subrogation in the context of a gross negligence claim. In general, parties are not permitted to file surreplies. Local Rule 105.2(a) (D. Md. 2011). A party moving for leave to file a surreply must show a need for a surreply. *Id.* If a defendant raises new legal issues or new theories in its reply

brief, there is a basis to permit a plaintiff to file a surreply. *TECH USA, Inc. v. Evans*, 592 F. Supp. 2d 852, 862 (D. Md. 2009); *Interphase Garment Solutions, LLC v. Fox Television Stations, Inc.*, 566 F. Supp. 2d 460, 466 (D. Md. 2008). Moreover, "[s]urreplies may be permitted when the moving party would be unable to contest matters presented to the court for the first time in the opposing party's reply." *See Khoury v. Meserve*, 268 F. Supp. 2d 600, 605 (D. Md. 2003).

In this case, Defendant Tuckman-Barbee did not raise new legal issues or new theories in its reply brief and Plaintiff has not shown a need for the surreply. In fact, it was Plaintiff who in its own Response in Opposition to Tuckman-Barbee's Motion for Summary Judgment first addressed the issue of waivers of subrogation in the context of a gross negligence claim. Moreover, as stated *supra,* Plaintiff's motion to assert a claim of gross negligence against Tuckman-Barbee is denied. Accordingly, there is no need for arguments surrounding allegations of gross negligence. As a result, Plaintiff's Motion for Leave to File a Surreply is also DENIED.

## II.    Defendant Tuckman-Barbee's Motion for Summary Judgment (ECF No. 28)

Defendant Tuckman-Barbee has moved for summary judgment on the ground that both its subcontract with Church Restoration Group, LLC ("CRG") and CRG's agreement with MTB contain waivers of subrogation which preclude this action. In response, MTB contends that the August 25, 2009 lift rental agreement, which contains an integration clause, is controlling in this case and that summary judgment should be denied because this agreement does not contain a waiver of subrogation. Moreover, MTB contends that there is

no contract privity between it and Tuckman-Barbee and that Tuckman-Barbee cannot enforce the terms of its contract with CRG against MTB.

"Whether an agreement is integrated and the effect of an integration clause are preliminary questions of interpretation determined by the court." *Jaguar Land Rover N. Am., LLC v. Manhattan Imported Cars, Inc.*, 738 F. Supp. 2d 640, 648 (D. Md. 2010), *aff'd*, 477 Fed. App'x 84 (4th Cir. 2012). As a preliminary matter, a determination must be made as to which state's substantive law should apply to the issue of contract interpretation. The Court notes that the parties have not briefed this issue. This issue arises from the fact that the August 25, 2009 lift rental agreement ("August Rental Agreement") between Plaintiff MTB and Defendant CRG is silent as to choice of law, while the May 27, 2009 sub-subcontract agreement between MTB and CRG ("CRG-MTB Agreement") includes a provision whereby the parties agree that "any claim or controversy regarding this Subcontract . . . shall be interpreted in accordance with the laws of the Commonwealth of Pennsylvania." CRG-MTB Agreement ¶ 28, ECF No. 28-5. Moreover, according to the contract between Tuckman-Barbee, the general contractor, and CRG, the subcontractor, the parties have agreed that the governing law shall be "the law of the place where the Project is located," which in this case is Maryland. AIA Doc. A201-1997, General Conditions of the Contract for Constr., ECF No. 28-3. This same contract includes a provision which states that:

> The Contractor may require the Subcontractor to enter into agreements with Sub-subcontractors performing portions of the Work of this Subcontract by which the Subcontractor and the Sub-subcontractor are mutually bound, to the extent of the Work to be performed by the Sub-subcontractor, assuming toward each other all obligations and

> responsibiltiies which the Contractor and Subcontractor assume toward
> each other and having the benefit of all rights, remedies and redress each
> against the other which the Contractor and Subcontractor have by virtue
> of the provisions of this Agreement.

AIA Doc. A401-1997 Standard Form of Agreement Between Contractor and Subcontractor, Art. 2 § 2.1, ECF No. 28-2 [hereinafter TB-CRG Contract]. The terms "Contractor" and "Subcontractor" in this contract designate Defendants Tuckman-Barbee and CRG respectively.

Because this action was removed from Maryland state court on diversity grounds, Maryland's choice of law provisions apply. *See Res. Bankshares Corp. v. St. Paul Mercury Ins. Co.*, 407 F.3d 631, 635 (4th Cir. 2005) ("A federal court hearing a diversity claim must apply the choice-of-law rules of the state in which it sits."). Maryland generally adheres to the rule of *lex loci contractus*, under which the construction of a contract is determined by the law of the state where the contract was made. *See Allstate Ins. Co. v. Hart*, 611 A.2d 100, 101 (Md. 1992). A contract is generally deemed to be "made" in the state where the "last act necessary" to form the contract took place. *Rouse Co. v. Fed. Ins. Co.*, 991 F. Supp. 460, 462 (D. Md. 1998). "Generally, that last act is a party's signature." *Baker v. Antwerpen Motorcars Ltd.*, 807 F. Supp. 2d 386, 389 n.13 (D. Md. 2011) (citing *Solid Concepts, LLC v. Fallen Soldiers, Inc.*, DKC–09–2377, 2010 WL 3123269, at *1 n.1 (D. Md. Aug. 9, 2010) (interpreting Maryland law). In this case, the location at which the last act necessary to form the August 25, 2009 lift rental agreement took place is unclear.

Nevertheless, this Court has previously recognized that "Maryland courts [can] apply

a limited *renvoi* exception to traditional contract choice of law principles." *Charter Oak Fire Ins. Co v. Am. Capital, Ltd.*, DKC-09-0100, 2011 WL 856374, at *7 (D. Md. Mar. 9, 2011).[10] Under this exception, a Maryland court may "disregard the rule of *lex loci contractus* and apply Maryland law, if: (1) Maryland has a substantial relationship to the contractual issue presented; and (2) the foreign jurisdiction whose law of contract interpretation would ordinarily apply under Maryland's *lex loci* principle would, under the foreign jurisdiction's own choice of laws principles, apply Maryland law." *Rouse*, 991 F. Supp. at 463 (citing *Am. Motorists Ins. Co. v. ARTA Grp., Inc.*, 659 A.2d 1295, 1304 (Md. 1995)).

First, Maryland has a substantial relationship to the contractual issue presented given the fact that the Naval Academy Chapel which was the subject of the renovation Project is located in Annapolis, Maryland. Additionally, the Lift leased to CRG through the August Rental Agreement was shipped to the Naval Academy Chapel in Annapolis, Maryland. Moreover, the incident which resulted in damage to the Lift occurred at the Chapel in Annapolis, Maryland. Finally, not only does Defendant Tuckman-Barbee have its principal place of business in the State of Maryland, but also, each Defendant has admitted that they regularly conduct business in the State of Maryland. *See* Tuckman-Barbee, Brand Energy and CRG Answers, ECF Nos. 19, 55 & 58.

Second, this Court has previously held that "Pennsylvania would in fact apply Maryland law" when interpreting a contract containing an integration clause and evaluating

---

[10] *Renvoi* is "[t]he doctrine under which a court in resorting to foreign law adopts as well the foreign law's conflict of laws principles, which may in turn refer the court back to the law of the forum." *Black's Law Dictionary* 1324 (4th ed. 2004)

the admissibility of parol evidence under each state's law to determine the intent of the parties. *Charter Oak Fire Ins. Co.*, 2011 WL 856374, at *7-10 (interpreting Pennsylvania Law). In coming to this conclusion, this Court first determined that a conflict exists between Maryland and Pennsylvania law with regard to the admissibility of parol evidence when an integration clause is present in a contract. *Id.* The Court then stated that this conflict would cause a Pennsylvania court to "determine 'which state has the greater interest in application of its law.'" *Id.* at *8 (citing *Buchtel Assoc., LP v. Cont'l Cas. Co.*, 915 A.2d 640, 643 (Pa. Super. 2006)). In making this determination, this Court reviewed the factors applicable in the insurance contract and general contract contexts. It concluded that a Pennsylvania court would apply Maryland law where the application of the insurance contract factors was inconclusive and where two of the five general contract factors tended to suggest the application of Maryland law while the other three factors favored neither Maryland nor Pennsylvania law. *Charter Oak Fire*, 2011 WL 856374, at *9-10.

As in *Charter Oak Fire*, this case involves the admissibility of parol evidence where a contract includes an integration clause. Accordingly, a Pennsylvania court would find that there is a conflict between Maryland and Pennsylvania law and would then consider which state has the greater interest in applying its law. However, as opposed to the *Charter Oak Fire* case, the present case does not involve an insurance contract, therefore, this Court need only consider the general contract factors referenced in Section 188(2) of the Second Restatement. *Charter Oak Fire*, 2011 WL 856374, at *9 (citing *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 233 (3d Cir. 2007)). The factors include: "the place of contracting; (2) the

place of negotiation of the contract; (3) the place of performance; (4) the location of the subject matter of the contract; and (5) the domicile, residence, nationality, place of incorporation and place of business of the parties." *Id.* In the instant case, there is no evidence as to the place of contracting and the place of negotiation of the contract. The place of performance and the location of the subject matter of the contract factors both weigh in favor of applying Maryland law. Finally, while CRG's principal place of business is located in Pennsylvania, Plaintiff's principal place of business is in Kansas and the other Defendants have their principal places of business in Maryland and Georgia. Accordingly, "this factor is neutral." *Charter Oak Fire*, 2011 WL 856374, at *10 (quoting *Hammersmith*, 480 F.3d at 234). As such, this is again a case, where two factors point to Maryland law while the three remain factors weigh neither in favor of nor against either state. As this Court previously determined, a Pennsylvania court would, therefore, apply Maryland law. Thus, Maryland law governs.

With respect to contract interpretation, Maryland law applies the objective test. *U.S.I.F. Triangle v. Rockwood Dev. Co.*, 275 A.2d 487, 489-90 (Md. 1971). In applying this test, the court is limited to the "four corners of the contract in considering what the intention of the parties was." *Kasten Contr. Co. v. Rod Enter.*, 301 A.2d 12, 17 (Md. 1973) (citation omitted). Moreover,

> "Maryland law generally recognizes the validity and effect of integration clauses. *See, e.g., Pumphrey v. Kehoe*, 261 Md. 496, 505, 276 A.2d 194, 199 (1971) (an integration clause, "although not absolutely conclusive, is indicative of the intention of the parties to finalize their complete understanding in the written contract[.]"); *Kasten Constr. Co. v. Rod*

> *Enterprises, Inc.*, 268 Md. 318, 301 A.2d 12 (1973)(courts generally should not look beyond the contract to evidence of prior statements or agreements, especially when contract contains integration clause)."

*Hovnanian Land Inv. Grp. v. Annapolis Towne Ctr. at Parole, LLC*, 25 A.3d 967, 985-86 (Md. 2011). However, "[t]he presence of an express integration clause does not resolve definitively the question of whether the parties' agreement is a complete integration." *Jaguar Land Rover N. Am., LLC. v. Manhattan Imp. Cars, Inc.*, 738 F. Supp. 2d 640, 648 (D. Md. 2010), *aff'd*, 477 Fed. App'x 84 (4th Cir. 2012). The United States Court of Appeals for the Fourth Circuit has noted that "although the inclusion of an integration clause 'suggests that the agreement is fully integrated, it does not by itself dictate that conclusion.' " *Bakery and Confectionery Union & Indus. Int'l Pension Fund v. Ralph's Grocery Co.*, 118 F.3d 1018, 1024 (4th Cir. 1997 (quoting *Bowden v. United States*, 106 F.3d 433, 440 (D.C. Cir. 1997)). In interpreting the "scope of the parties' agreement," courts may analyze "[t]he circumstances of the instruments' drafting and the content of the written instruments." *Jaguar Land Rover N. Am.*, 738 F. Supp. 2d at 648. In *Jaguar Land Rover North America, LLC v. Mahattan Imported Cars, Inc.*, 477 Fed. App'x 84, 87 (4th Cir. 2012), the Fourth Circuit stated that:

> Integration clauses are more likely to be enforced literally when the same parties have entered into more than one agreement addressing the same subject. *See Hercules Powder Co. v. Harry T. Campbell Sons Co.*, 156 Md. 346, 144 A. 510, 516-17 (1929). In such a circumstance, the later-executed agreement annuls any prior agreements addressing the same subject because the agreements conflict and cannot be construed together. *See id.* However, when separately-executed contracts between the same parties do not have conflicting provisions and are entered into as part of a single transaction, those agreements will be construed together even when they are executed at different times and do not refer to each other. *See Rocks v. Brosius*, 241 Md. 612, 217 A.2d 531, 545 (1966).

In this case, this Court is confronted with separately-executed contracts, executed at different times, each including integration clauses, generally addressing the same subject matter but containing conflicting provisions. The August Rental Agreement entered into by MTB and CRG by which MTB leased the damaged ReachMaster Falcon FS 95 Lift ("the Lift") to CRG includes an integration clause which states: "This Agreement constitutes the entire Agreement between the Customer and the Company. The Customer acknowledges that the Company has made no representation, or oral or written, other than those included in this Agreement."[11] August Rental Agreement ¶ 22. In this agreement, Defendant CRG also agreed to obtain insurance with respect to the Lift and to name Easy Reach Lifts as loss payee. August Rental Agreement at 1. Additionally, the August Rental Agreement includes the following provisions:

> 16. Equipment damaged beyond repair, will be paid for at its replacement cost to the Company. The cost of the repairs will be borne by the Customer whether performed by the Company, or, at the Company's option, by others.
> . . .
> 18. THE CUSTOMER ACCEPTS FULL AND COMPLETE RESPONSIBILITY FOR ALL INJUIES TO PERSONS AND PROPERTY (INCLUDING ANY INJURY TO THE CUSTOMER'S EMPLOYEES) ARISING OUT OF HE(sic) MAINTENANCE, USE OR TRANSPORTATION OF THE EQUIPMENT BY THE CUSTOMER OR OTHERS FROM THE TIME THE CUSTOMER TAKES POSSESSION THEREOF, UNTIL THE EQUIPMENT IS RETURNED TO AND ACCETPED BY THE COMPANY. THE CUSTOMER HEREBY ALSO AGREES TO INDEMNIFY AND SAVE THE COMPANY HARMLESS FROM ANY AND ALL CLAIMS, SUITS AND LIABILITY OF ANY EVERY NATURE WHATSOEVER (INCLUDING ANY LIABILITY TO, OR CLAIM OR

---

[11] The terms "Customer" and "Company" refer to Defendant CRG and Plaintiff MTB respectively.

SUITE ASSERTED BY, ANY EMPLOYEE OF THE CUSTOMER) ARISING OUT OF THE MAINTENANCE, USE OR TRANSPORTATION OF THE EQUIPMENT BEFORE IT IS RETURNED TO AND ACCEPTED BY THE COMPANY. The Company is not responsible for damage to flooring. . .

19. No Term or Condition of the Agreement may be Waived or Modified as to the Customer except by a written instrument signed by the Company's authorized representative or by an appropriate written Agreement executed by an officer of the Company.

August Rental Agreement ¶¶ 16, 18-19.

The May 27, 2009 agreement entered into by MTB and CRG also includes an integration clause which states: "As regards the subject matter hereof, this writing constitutes the entire agreement between the parties." MTB-CRG Agreement ¶ 27(a). This Agreement further includes an insurance provision which reads:

13. Insurance. Until completion and final acceptance of the Work, *Subcontractor shall maintain and pay for insurance coverage* with respect to the Work, of the types and with minimum limits set forth in the Attachment hereto. Such coverage shall be maintained in form and with companies acceptable to Contractor, Architect and Owner. Notwithstanding said Attachment, or if there is no Attachment hereto regarding insurance, the Subcontractor shall in any event always meet all applicable requirements imposed under the Contract or by any governmental authority having jurisdiction over the Work. Each policy of insurance required herein above shall provide for 30 days' notice to Contractor prior to cancellation or material change in coverage.

The Subcontractor shall bear all risk of loss to, and shall carry appropriate insurance on, any and all of its equipment, tools and materials on the job, which coverage shall protect the Subcontractor against all risks including but not limited to fire, vandalism, casualty and theft. *The subcontractor waives all rights of subrogation against the Contractor in the event loss or harm.*

Subcontractor shall be responsible for any desired coverage against damage or loss to materials, facilities, tools, equipment, plant scaffolds, bracing and similar items not covered by Owner's or Contractor's fire

insurance policy (with builder's risk endorsement), if any, including any materials or equipment of the Owner in transit or not delivered to the Project site under control of the Subcontractor.

Subcontractor shall furnish Contractor certificates of the insurance required hereunder prior to commencing in the Work, showing Owner and Contractor as additional insureds, and a copy of each lost-time accident report made to Subcontractor's insurance carriers. Subcontractor shall cooperate with its insurers to facilitate the adjustment of any claim or demand arising out of operations within the scope of the Work. Nothing contained in this Section 13 shall relieve subcontractor of its indemnity obligations set forth elsewhere in the Subcontract.

MTB-CRG Agreement ¶ 13 (emphasis added).[12]

Additionally, this Agreement establishes a continuing agreement covering future work where "the terms and provisions of this agreement, except price and scope of work, shall govern unless and *except as modified in writing by both parties*." *Id.* ¶ 31 (emphasis added). Moreover, the parties agreed that the "terms and provisions herein shall automatically apply and constitute the terms and provisions of the contract between the parties whether or not the parties make any reference to this agreement in future works assignments." *Id.* In defining the "Work" contracted for, the parties include the May 13, 2009 rental agreement ("May Rental Agreement") previously executed between the parties as a proposal. *Id.* at Schedule A. The Court notes that but for the description of the leased equipment and the fact that CRG agreed to the damage waiver in the May Rental Agreement, both rental agreements are identical and include the same provisions with respect to CRG's liability and provision of insurance. Neither party has stricken from either rental agreement the

---

[12] The term "Contractor" refers to Defendant CRG and the term "Subcontractor" refers to Plaintiff MTB.

provisions concerning CRG's liability and its agreement to obtain insurance with respect to the rented lifts. Accordingly, this Court concludes that the parties intended these terms to be given effect. This is therefore a case where the agreements are in conflict and cannot be construed together. *See Jaguar Land Rover N. Am., LLC*, 477 Fed. App'x at 87. Hence, the integration clauses should be enforced literally and each contract reviewed separately. *Id.*

As there is no waiver of subrogation in the August Rental Agreement, MTB has not waived subrogation with respect to its insurer's ability to recover for damages to the ReachMaster Falcon FS 95 Lift. While Tuckman-Barbee contends that its contract with CRG requiring that CRG obtain waivers of subrogation from its sub-subcontractors should be enforced, nothing in the August Rental Agreement supports this conclusion. Should Defendant CRG have wanted the waiver of subrogation contained in the sub-subcontract agreement with MTB to apply to the August Rental Agreement, it could have stricken the conflicting terms from the form rental agreement or added a provision to that effect. Moreover, the August Rental Agreement is silent as to any rights and agreements effected between Defendant Tuckman-Barbee and Plaintiff MTB. Accordingly, Defendant Tuckman-Barbee's Motion for Summary Judgment is DENIED as Plantiff MTB did not waive subrogation under the August Rental Agreement.

### III. Defendant Tuckman-Barbee's Motion to Join Travelers Property Casualty Company of America as a Party Plaintiff (ECF No. 44)

Defendant Tuckman-Barbee moves to join Travelers Property Casualty Company of America ("Travelers") as a party plaintiff pursuant to Rules 17 and 19(a) of the Federal Rules

of Civil Procedure.[13]  Specifically, Tuckman-Barbee contends that because this is a partial subrogation action, both Plaintiff MTB and its insurer Travelers should properly be named as Plaintiffs in this case.  Conversely, MTB argues that Travelers is not a "required party" subject to mandatory joinder and that legal precedent has established that either the insurer or insured are appropriate parties in a partial subrogation action.  Moreover, Plaintiff contends that joining Travelers to this action would deprive it of its rights under the collateral source doctrine.[14]

Rule 17 and Rule 19 of the Rules of Federal Procedure have essentially the same purpose: "the protection of defendants from multiple litigation of the same claim." *Jefferson v. Ametek*, 86 F.R.D. 425, 430 (D. Md. 1980).  These rules govern "the joinder or non-joinder of persons, in the one case because the absent person is 'the real party in interest,' and the other because their joinder is 'needed for just adjudication.' " *Jacobs Press, Inc. v. The Hartford Steam Boiler Inspection & Ins. Co.*, 107 F.3d 866 (Table), 1997 WL 90665, at *5 (4th Cir. 1997) (unpublished per curiam opinion).  Specifically, Rule 17(a) provides that "[e]very action shall be prosecuted in the name of the real party in interest."  FED. R. CIV. P. 17(a).  The United States Court of Appeals for the Fourth Circuit has previously held that "[w]here there is partial subrogation, there are two real parties in interest under Rule 17." *Virginia. Elec. &*

---

[13] Tuckman-Barbee had initially moved to substitute Travelers as a Real Party in Interest (ECF No. 37).  This motion is now MOOT as Plaintiff MTB has admitted that this case involves partial subrogation.  *See* MTB's Mem. in Supp. of Resp. to Tuckman-Barbee's Mot. to Substitute Real Party in Interest at 3, ECF No. 42-1.

[14] The collateral source doctrine, recognized in Maryland, applies in tort cases and "bars a culpable party whose wrongdoing has injured another party from escaping responsibility for paying damages because the injured party's expenses have been paid by a third party (such as a health insurer)." *Corapcioglu v. Roosevelt*, 907 A.2d 885, 909 (Md. App. 2006) (citing *Narayen v. Bailey*, 747 A.2d 195 (Md. App. 2000)).

*Power Co. v. Westinghouse Elec. Corp.*, 485 F.2d 78, 84 (4th Cir. 1973), *cert denied*, 415 U.S. 935 (1974); *see also United States v. Aetna Cas. and Sur. Co.*, 338 U.S. 366 (1949) (holding that an insurer-subrogee is a real party in interest under Rule 17 of the Federal Rules of Civil Procedure).  Accordingly, either "the insurer-subrogee to the extent it has reimbursed the subrogor, or the subrogor" can bring a subrogation action "for either the entire loss or only its unreimbursed loss."  *Virginia Elec. & Power Co.*, 485 F.2d at 84.  However, a defendant may "upon timely motion . . . compel the joinder of the insurer-subrogee or insured-subrogor."  *Jacobs Press*, 1997 WL 90665, at *5 (citing, *inter alia*, *Virginia Elec. & Power Co.*, 485 F.2d 78 (4th Cir. 1973)).

With respect to persons that must be joined if feasible, Rule 19(a) states in relevant part:

> (1) *Required Party.* A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
> (i) as a practical matter impair or impede the person's ability to protect the interest; or
> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

FED. R. CIV. P. 19(a).  Under this rule, if a party is determined to be necessary "it will be ordered into action."  *Owens-Illinois, Inc. v. Meade*, 186 F.3d 435, 440 (4th Cir. 1999).  This Court has previously held that an insurer-subrogee is a "necessary" party in partial subrogation cases.  *See Poleski v. Moore-McCormack Lines*, 21 F.R.D. 579, 582 (D. Md. 1958)

(granting a motion to join an insurance carrier as a party plaintiff); *see also Jacobs Press*, 1997 WL 90665, at \*9. Moreover, the Fourth Circuit has noted that "[i]t is clear that a partial subrogee is a person to be joined if feasible under" Rule 19(a). *Virginia Elec. & Power Co.*, 485 F.2d at 85. Courts in this circuit have only rejected joinder of a partial subrogee under both Rules 17 and 19 when joinder would destroy diversity jurisdiction. *See Jacobs Press*, 1997 WL 90665, at \*9; *Virginia Elec. & Power Co.*, 485 F.2d at 85; *Jefferson*, 86 F.R.D. at 430; *Potomac Elec. Power Co. v. Babcock & Wilcox, Co.*, 54 F.R.D. 486, 490 (D. Md. 1972).

In this case, Plaintiff MTB has acknowledged that this case presents a partial subrogation action. Moreover, Defendant Tuckman-Barbee has timely moved for the joinder of Travelers under both Rules 17 and 19(a) of the Federal Rules of Civil Procedure. As Travelers is the insurer-subrogee, Travelers is both a real party in interest and a necessary party under these Rules. Additionally, Travelers is organized under the laws of the State of Connecticut and has its principal place of business in Connecticut. *See Star Ins. Co. v. Cont'l Servs., Inc.*, --- F. Supp. 2d ----, 2013 WL 175229, at \*2 (D. N.D. Jan. 17, 2013). As such, joinder of Travelers will not have the effect of destroying diversity.

Finally, while Plaintiff MTB argues that joinder of Travelers will have the effect of depriving it of its rights under the collateral source doctrine, this argument is without merit. The Fourth Circuit has stated that in "*partial* subrogation cases, the insured's right of action against the wrongdoer is single and indivisible, even though the insurer is subrogated to the rights of the insured to the extent of the loss paid." *Balcor Equity Props. XVIII v. Caligo Ltd.*, 44 Fed. App'x 623, 629 (4th Cir. 2002) (emphasis in original) (citation and quotation marks

omitted).   Moreover, under the collateral source rule "compensation from insurance proceeds will not reduce the amount of damages for which the wrongdoer is liable."  *Id.*[15] Accordingly, Plaintiff Tuckman-Barbee's Motion to Join Travelers as a Party Plaintiff is GRANTED.

<u>CONCLUSION</u>

For the reasons stated above, Defendant Tuckman-Barbee's Motion for Summary Judgment (ECF No. 28) is DENIED.  Plaintiff MTB's Motions for Leave to File Amended Complaint (ECF No. 32) and for Leave to File Surreply in Opposition to Defendant Tuckman-Barbee's Motion for Summary Judgment (ECF No. 41) are DENIED. Additionally, Defendant Tuckman-Barbee's Motion to Substitute Real Party in Interest (ECF No. 37) is MOOT and its Motion to Join Travelers Property Casualty Company of America as a Party Plaintiff (ECF No. 44) is GRANTED.  Accordingly, Travelers Property Casualty Company of America shall be joined as a Party Plaintiff in addition to Plaintiff MTB Services, Inc.

A separate Order follows.

Dated:        April 30, 2013              /s/_____
                                          Richard D. Bennett
                                          United States District Judge

---

[15] Although the Fourth Circuit in that case refers to the application of the collateral source rule in South Carolina, the rule is similarly applicable in Maryland.  *See, e.g., Haischer v. CSX Transp., Inc.*, 848 A.2d 620 (Md. 2004).